IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRITTNEY NICOLE AGUIRRE and CHRISTOPHER PAPION, individually and d/b/a PAPPY'S DOWN SOUTH BBQ, <br><br> Defendants. | Case No.: 1:10-cv-02293 AWI JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT <br><br> (Doc. 13) |

Joe Hand Promotions, Inc. ("Plaintiff") seeks the entry of default judgment against Brittney Nicole Aguirre and Christopher Papion, individually and doing business as Pappy's Down South BBQ ("Defendants"). (Doc. 13). Defendants have not opposed Plaintiff's application. The Court reviewed Plaintiff's motion and supporting documents and determined that this matter is suitable for decision without oral argument pursuant to Local Rule 230(g).

For the following reasons, the Court recommends that Plaintiff's application for default judgment be **GRANTED IN PART AND DENIED IN PART**.

I.  **Procedural History**

On December 9, 2010, Plaintiff filed its complaint against Defendants, alleging violations of 47 U.S.C. § 605, *et seq*.; 47 U.S.C. § 533, *et seq*.; and the California Business and Professions Code § 17200, *et seq*. (Doc. 1 at 3-8). In addition, Plaintiff alleges Defendants are liable for wrongful

1

conversion of property, arising under California State law. *Id.* at 6-7. Plaintiff alleges it possessed the exclusive rights to the nationwide commercial distribution of the program entitled "Ultimate Fighting Championship 107: BJ Penn v. Diego Sanchez" ("the Program"), televised on December 12, 2009. *Id.* at 3. Plaintiff's claims are based upon Defendants' alleged unlawful interception and broadcast of the Program.

Defendants were each served with the complaint on March 31, 2011 (Docs. 7-8), but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, and pursuant to Fed.R.Civ.P. 55(a), default was entered against Defendants on April 14, 2011. (Doc. 10). Plaintiff filed its application for default judgment on May 11, 2011. (Doc. 13).

On June 13, 2011, Defendants requested an extension of time "to 'reply' to [Plaintiff']" accusations. (Doc. 15). Defendants asserted they had not been properly served because the summons and complaint were left with a waitress at their restaurant.[1] *Id.* Defendants failed to explain why they believe this service was improper or ineffective. On June 16, 2011, the Court denied Plaintiff's request for an extension because "the entry of default cuts of Defendants' rights to appear in the action, file counterclaims, or to present a defense." (Doc. 16 at 2)(quoting *Great Am. Ins. Co v. M.J. Menefee Constr., Inc.*, 2006 U.S. Dist. LEXIS 64902, at *6 (E.D. Cal. Aug. 29, 2006). The Court noted "any action taken by Defendants at this time may be directed only toward addressing the entry of default." *Id.* To date, Defendants have not taken any such action.

## II.  Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment. Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed.R.Civ.P. 55(a)-(b). After the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

---

[1] Plaintiff's proofs of service indicate service was accomplished through substitute service. (Docs. 7, 8).

The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). In addition, granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III. Plaintiff's Factual Allegations

Plaintiff states that by contract, it possessed exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 3). According to Plaintiff, the Program consisted of the main fight between BJ Penn and Digo Sanchez, under-card bouts, and fight commentary. *Id*. Plaintiff sought to identify signal pirates who broadcast the Program without purchasing a sublicense, and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." (Doc. 13-4 at 2).

Without purchasing a sublicense from Plaintiff, Defendants broadcast the Program in their establishment (Doc. 1 at 4), which had a capacity of 100 people (Doc. 13-3 at 2). For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. (Doc. 1 at 3-7). However, in its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. Therefore, the Court will only address these claims against Defendants.

///

///

3

**IV.   Application of *Eitel* Factors**

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's application for default judgment.

    A.   <u>Prejudice to Plaintiff</u>

Following the entry of default against Defendants, Plaintiff has no other alternative by which to recover damages suffered as a result of Defendants' piracy. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *J & J Sports Productions v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

    B.   <u>Merits of Plaintiff's claims and sufficiency of the complaint</u>

Given the kinship of these factors, the Court will consider the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3. In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, the Communications Act claim requires Plaintiff to prove that it was the party aggrieved by Defendants' actions. 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6).

In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 3). The rate sheet for the Program, attached as Exhibit

1 to the affidavit of Joe Hand, Jr., president of Joe Hand Promotions, provides evidence that Plaintiff possessed the distribution rights, as the company information is listed, and individuals interested in broadcasting the Program were directed to "call your Joe Hand Promotions representative" with the company information as listed on the rate sheet. (Doc. 13-4, Ex. 1). Thus, the Court finds Plaintiff was the party aggrieved under § 605.

In addition to establishing that it was a "person aggrieved," Plaintiff must show Defendants intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff's investigator, Gilbert Tate, reported that he did not see a cable box or a satellite dish at the establishment. (Doc. 13-3 at 2). Plaintiff acknowledges that it is unable to "determine the precise means that the Defendants used to receive the Program unlawfully" because Defendants failed to answer the Complaint, and argues, "Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendants used . . ." (Doc. 13-1 at 8). Similarly, in *Hernandez*,[2] the plaintiff was unable to identify the nature of the transmission. As noted by the Court, "inability to allege the precise nature of the intercepted transmission in this case ... raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *10. According to the Ninth Circuit, satellite signals are communications covered by 47 U.S.C. § 605(a). *Id.*, citing *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Regardless of Plaintiff's inability to isolate the means of the signal transmission, Plaintiff has raised factual allegations that Defendants showed the Program without purchasing a license for the broadcast, because the investigator witnessed un under-card match between Stefan Struve and Paul Buentello on televisions at Pappy's Down South BBQ. (Doc. 13-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved and Defendants intercepted the Program and published it in their establishment without Plaintiff's permission.

///

---

[2] Notably, the plaintiff in the matter now before the Court was represented by the same attorney, Thomas P. Riley. *See* No. 2:09-cv-3389 GEB KJN.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010), citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Ca. 1995). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

In this case, Plaintiff held a "right to possession of property" because Plaintiff established it held the right to distribution of the Program. Also, Plaintiff has shown Defendants engaged in signal piracy by broadcasting the Program without a sublicense. Plaintiff established damages by providing the rate sheet listing the cost of a proper sublicense as $1,100. (*See* Doc. 13-4, Ex. 1). Thus, Plaintiff has stated a claim for conversion against Defendants.

C.  Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. (Doc. 13-1 at 11-19). In addition, Plaintiff seeks compensatory and punitive damages for Defendants' tortuous conversion of Plaintiff's property. *Id.* at 20-21. Plaintiff recognizes that Defendants would have been required to pay $1,200 to broadcast the program, but Plaintiff asserts Defendants should be required to pay the statutory maximum because nominal

damages have proven insufficient to combat piracy.  (Doc. 13-1 at 20).  Thus, Plaintiff seems to concede that amount of damages requested is not proportional to Defendants' conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment.  *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against entry of default judgment).  Though the significant sum would weigh against granting default judgment, the Court declines to enter judgment in the amount requested.  Therefore, the factor does not weigh against Plaintiff.

D.   Possibility of dispute concerning material facts

The Court also considers the possibility of dispute as to any material facts in the case.  Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) Defendants have not made an effort to challenge the entry of default in this action.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177.  Therefore, this factor does not weigh against entry of default judgment.

E.   Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect.  *See Eitel,* 782 F.2d at 1472.  Here, Defendants were each served with the Summons and Complaint.  Moreover, Defendants admitted to having received the Summons and Complaint, though they assert service was improper.  (*See* Doc. 15 at 1).  Given these circumstances, it is unlikely that Defendants' failure to answer, and the resulting default entered by the Clerk of Court, were the result of excusable neglect.  *See Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were

7

properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, a decision on the merits is impractical regarding Defendants' liability due to their failure to appear and defend in this action. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against Plaintiff.

## V. Damages

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendants' act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiffs and the additional damages sustained by Plaintiff as a result of the Defendants' unlawful actions." (Doc. 13-1 at 9-10). As stated above, Plaintiff requests the statutory maximum (including enhanced damages) for the violation of the Communications Act and damages for the tort of conversion, bringing the total requested to of $111,200.00.

### A. Statutory Damages

Under the Communications Act, a plaintiff may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii).

A court may consider many factors to determine whether an act was "committed willfully" and the amount of damages to be awarded. Notably, "the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000). Previously, this Court explained:

> To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a pirated program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks. The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired.

*Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (internal quotation marks and citation omitted), citing *Backman*, 102 F.Supp.2d at 1198. Many courts consider the number and size of televisions upon which the pirated program was broadcast. *Id.* Finally, the pirating history of the defendant is a factor, and damages may be enhanced for repeated offenses. *See, e.g., Joe Hand Promotions v. Gamino*, 2011 U.S. Dist. LEXIS 1960, at *9 (E.D. Cal. Jan. 10, 2011); *J & J Sports Prodsuctions, Inc. v. Ferreyra*, 2010 U.S. Dist. LEXIS 21140, at *11-12 (E.D. Cal. Mar. 9, 2010); *Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *8.

Here, Pappy's Down South BBQ had a capacity of one hundred people, and headcounts by Plaintiff's investigator, Mr. Tate, indicated twelve to fifteen people were present. (Doc. 13-3 at 2). Mr. Tate stated he paid $2.95 to enter the establishment, and the Program was shown "above the right side of the bar" on three television sets approximately 37" or 42" in size. *Id.* Plaintiff provided no evidence that a premium was charged for food or drinks, that Defendants advertised their pirated broadcast, or that the customers were present primarily to watch the Program. *See id.* Moreover, Plaintiff did not provide evidence that Defendants were repeat offenders who have engaged in signal piracy on prior occasions.

In spite of these facts, Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendants' wrongful interception and broadcast of the Program. In support, Plaintiff cites several cases from this district awarding the statutory maximum: *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, 2009 WL 1845090 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under §605 where there were two televisions, the capacity was fifty people, and there were between 23 and 29 patrons); *J & J Sports Productions v. Esquivel*, 2008 U.S. Dist. LEXIS 92140, 2008 WL 4657741 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 under both §553 and §605, plus enhanced damages where the capacity was 75 people, there were 35 individuals present, and the program was shown on a single television); *J & J Sports Productions, Inc. v. Flores*, 2009 U.S. Dist.

LEXIS 54676, 2009 WL 1860520 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under §605 and an additional $10,000 under §553 where there were between 33 and 35 people present and there was no cover charge); *J & J Sports Productions, Inc. v. George*, 2008 U.S. Dist. LEXIS 85770, 2008 WL 4224616 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 under both §553 and §605 where the establishment had a capacity of 30 people and 20 were present, there was a single television and no entry fee, but not stating whether the award included enhanced damages).

Though Plaintiff argues these cases are comparable to the matter now before the Court, approximately twice as many patrons were in the establishments compared to the case at hand. Also, in *Tidmarsh*, the investigator rated the establishment as "excellent" and "noted it contained two pool tables and various video games at the back [with] a large television on one side of the establishment and a second, much smaller television on the opposite side." *Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, at *9. In contrast, the investigator here rated the establishment as "fair."(Doc. 13-3 at 2). In *Flores*, which awarded damages under both §553 and §605, it is not clear whether the $10,000 award was for statutory damages alone or included enhanced damages. *See Flores*, 2009 U.S. Dist. LEXIS 54676, at *5. Likewise, as acknowledged by Plaintiff, in both *Esquivel* and *George*, the Court awarded damages under both §553 and §605 without analyzing the propriety of cumulative damages for violations of both statutes. (Doc. 13-1 at 12-13).[3]

Moreover, courts in this district have found more recently that an award of the statutory minimum is appropriate where the defendant is not a repeat offender. *See, e.g., Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $1,000 in statutory damages and $3,000 in enhanced damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *Naranjo*, 2010 U.S. Dist. LEXIS 81264 (awarding $1,000 in statutory damages without enhanced damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no

---

[3] Since the decisions in *Flores* and *George*, many courts have determined a plaintiff should not be permitted to recover under both § 553 and § 605, though the Ninth Circuit has yet to address this question. Notably, this Court observed, "Although some courts, including some in the Eastern District of California, have multiplied awards when a defendant is liable under both provisions, the majority of courts in the Ninth Circuit and elsewhere have imposed damages only pursuant to one of the two sections." *Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6. Regardless, here, Plaintiff seeks damages under only §605.

10

admission fee was charged, and the program was displayed on a single television).  Notably, the Ninth Circuit upheld an award of $1,500 in a Communications Act case where the Central District judge reduced the damages award from $80,400 in the course of a Rule 59 motion, though the defendant would have had to pay "somewhere between $3,000 and $6,000 to buy the rights to show the fights" based upon the capacity of the establishment. *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009).  The Ninth Circuit observed, "The range in the statutory award might allow for a sanction that deters but does not destroy." *Id.*

Asserting a right to enhanced damages, Plaintiff argues, "the fact that such an interception is done for commercial advantage is . . . firmly decided" and that a court may infer willfulness from a defendant's failure to appear and defend. (Doc. 10-1 at 15-16).  Supporting this, Plaintiff cites to several cases from district courts in the Second Circuit and a district court from the Fifth Circuit.[4] However, in so arguing, Plaintiff ignores requirement that allegations regarding the amount of damages must be proven.  *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560.  Therefore, district courts within the Ninth Circuit generally inquire if the plaintiff provided evidence of commercial advantage from the act of piracy.

Absent evidence of commercial advantage or financial gain, the district courts have awarded the statutory minimum where the defendants were not repeat offenders. *See, e.g., Backman*, 102 F.Supp.2d at 1198-99 ("An establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers"); *Brown*, 2010 U.S. Dist LEXIS 119435; *Naranjo*, 2010 U.S. Dist. LEXIS 81264; *Garden City Boxing Club, Inc. v. Nguyen*, 2005 U.S. Dist. LEXIS 29886, at *12 (E.D. Cal. Nov. 28, 2005) (awarding the statutory minimum and finding "no evidence of significant commercial advantage or private financial gain" where the defendant did not advertise or charge admission, and ten customers were present); *J & J Sports*

---

[4] Notably, even in the cases cited by Plaintiff, the courts did not award the statutory maximum that is requested here. *See Joe Hand Prods. v. Haddock*, 2009 U.S. Dist. LEXIS 63048, at *5 (E.D. Cal. July 14, 2009) (recommending an award of $25,000 total under § 605); *Kingsvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, 1185 (D. Colo. 2008) (awarding $15,000 in enhanced damages after finding interception was willful); *Garden City Boxing Club, Inc v. Frezza*, 476 F.Supp.32d 135, 139-140 (D. Conn. 2007) (awarding $10,000 in enhanced damages because the defendant acted willfully).

11

*Productions v. Miranda*, 2009 U.S. Dist. LEXIS 112415, at *3-4 (N.D. Cal. Nov. 16, 2009) (awarding $1,000 in statutory damages for where the court found "no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation, or that it actually profited from the violation"); *J & J Sports Productions v. Hernandezsilva*, 2010 U.S. Dist. LEXIS 96891 (S.D. Cal. Sept. 15, 2010) (awarding $1,000 because "Plaintiff does not alleged repeated violations, does not claim that Defendants advertised the event, and offers only conclusory statements in support of its contentions that Defendants realized financial gain from showing the program").

Plaintiff states that "the unlawful exhibition may well have been promoted by word of mouth or advertising that went undetected by the auditors, to their own customers to increase their financial gain on the night our programs are broadcast at their establishment." (Doc. 13-4 at 4). However, this assertion is speculation on the part of the president. On the other hand, Plaintiff has shown that a cover charge of $2.95 was required for entry into the establishment. Therefore, Plaintiff has shown Defendants acted "for the purposes of direct or indirect commercial advantage or private financial gain" as required for enhanced damages.

Generally, when determining the total damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* As observed in *Streshly*, "the act of piracy attributed to [Defendants] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139 (S.D. Cal. 2009). There, the court refused to entertain the plaintiff's request for the maximum amount of statutory damages, noting that the requested amount of $100,875 was "ostensibly disproportionate." *Id.* Notably, the total amount sought by Plaintiff exceeds the amount requested in *Streshly*.[5]

Considering the above factors, the Court declines to recommend that Plaintiff's request for an award of the statutory maximum be ordered. Rather, the facts weigh in favor of awarding statutory damages in the amount of $2,500. Though the establishment held three television sets, there is no

---

[5] The plaintiff in *Streshly* was represented by the same counsel, Thomas P. Riley. In *Streshly*, the plaintiff requested a total of $100,875 in damages. Here, as noted, Plaintiff requests a total of $111,200.

evidence of advertising for the pirated broadcast of the Program, and there were few patrons present. On the other hand, the establishment charged a cover fee, though it was low. Thus, the requested amount of enhanced damages is not warranted because there is no evidence that Defendant engaged in signal piracy on prior occasions. Though the Court will not speculate as to any financial gain or commercial advantage gained by Defendants' broadcast of the Program, because Defendants charged a cover fee for the event, the damages will be enhanced by $1,500 to deter them from acts of piracy in the future.

### B. Damages for Conversion

Plaintiff requests $1,200 for damages for the tort of conversion. (Doc. 13-1 at 20-21). The rate card attached to the declaration of Mr. Hand indicates that established with a capacity up to one hundred patrons were charged $1,200 for a sublicense. (Doc. 13-4, Ex. 1). The investigator indicated Pappy's Down South BBQ had a capacity of one hundred people. (Doc. 13-3 at 2). Therefore, Defendants would have been required to pay $1,200, and Plaintiff is entitled to this amount in damages. *See, e.g., Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6 (calculating damages for conversion based upon the amount defendants would have been required to pay for a broadcasting sublicense); *Brown*, 2010 U.S. Dist LEXIS 119435, at *16-17 (same); *but see Ferreyra*, 2008 U.S. Dist LEXIS 75840, at *2-3 ("Inasmuch as plaintiff seeks statutory damages rather than actual damages, plaintiff's request for damages for conversion should be denied"); *J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining to award conversion damages where the amount of statutory damages "sufficiently compensate[d]" the plaintiff). Therefore, the Court recommends $1,200 in damages for the tort of conversion.

## VI. Attorney Fees and Costs

In Plaintiff's prayer for relief in the complaint, as well as in the application for default judgment, Plaintiff seeks the award of costs and attorneys fees pursuant to 47 U.S.C. § 605. (*See*

Doc. 13 at 3).  However, no evidence of costs or attorney fees incurred was submitted to the Court in connection with the pending application.  The Local Rules provide, in relevant part,

> All motions for awards of attorneys' fees pursuant to statute shall, at a minimum, include an affidavit showing: (1) that the moving party was a prevailing party, in whole or in part, in the subject action...; (2) that the moving party is eligible to receive an award of attorneys' fees, and the basis of such eligibility; (3) the amount of attorneys' fees sought; (4) the information pertaining to each of the criteria [for awards] . . . ; and (5) such other matters as are required under the statute under which the fee award is claimed.

LR 293(b).  Upon the receipt of such an affidavit, the Court considers the time and labor required, the novelty and difficulty of the issues, the skill required to perform the legal service, and several other factors.  LR 293(c).  Here, because Plaintiff failed to provide an affidavit or evidence of costs and fees, the request for attorneys fees pursuant to 47 U.S.C. § 605 is procedurally defective.  Accordingly, the Court will not recommend the award of attorney fees and costs at this time.

## VII.  Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  However, the damages requested are disproportionate to Defendants' actions.  Though Plaintiff argues a higher award is necessary to deter future acts, the arguments are unpersuasive in light of the record before the Court.  Moreover, the Ninth Circuit has observed that a lower statutory award may deter while not destroying a business.  *See Lake Alice Bar*, 168 F.3d at 350.  Given the size of the establishment in issue, a lower amount both compensates Plaintiff for the wrong act and acts as a suitable deterrent.

Accordingly, the Court **RECOMMENDS** Plaintiff's application for default judgment be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $2,500;
2. Plaintiff's request for enhanced damages be **GRANTED** in the amount of $1,500;
3. Plaintiff's request for damages for the tort of conversion be **GRANTED** in the amount of $1,200; and
4. Plaintiff's request for attorney fees and costs be **DENIED**.

///

1  These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to any objections shall be filed within 14 days of the filing of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 21, 2011**                                                      **/s/ Jennifer L. Thurston**
                                                                                                UNITED STATES MAGISTRATE JUDGE